UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DIXON ENRIQUE JARQUIN-RIVERA,<br><br>Defendant. | 4:25-CR-40041-RAL<br><br><br>OPINION AND ORDER<br>ON MOTIONS IN LIMINE |

A grand jury indicted Dixon Enrique Jarquin-Rivera with two counts of making a false statement during the purchase of a firearm and two counts of making a false statement to a licensed firearms dealer. Doc. 60. Jarquin-Rivera has pleaded not guilty to the charged offenses and has exercised his right to a jury trial. On July 13, 2026, this Court held a pretrial conference and motion hearing, where it heard argument on the Government's Motions in Limine, Doc. 53, on Defendant Jarquin-Rivera's Motions in Limine, Docs. 55, 64, and one Defendant's Motion to Exclude Expert Testimony, Doc. 49. This Court now formalizes its rulings with this Opinion and Order.

## I.    Legal Standard

Rulings on motions in limine are by their nature preliminary. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019). They "developed pursuant to the district court's inherent authority to manage the course of trials," Luce v. United States, 469 U.S. 38, 41 n.4 (1984), and are "specifically designed to streamline the presentation of evidence and avoid unnecessary

1

mistrials," Spotted Horse, 916 F.3d at 693. This practice helps safeguard the jury from hearing evidence so prejudicial that its mention could not be remedied through a corrective instruction. Motion in limine, Black's Law Dictionary (11th ed. 2019). Rulings on motions in limine necessarily occur before the nature and relevance of the evidence can be placed in full context. See Spotted Horse, 916 F.3d at 693. Therefore, a district court has broad discretion when ruling on motions in limine and retains the authority to revisit and change its rulings based on how the case unfolds. Luce, 469 U.S. at 41–42. If this Court grants a motion in limine to exclude certain information, that information must not be mentioned during voir dire, opening statements, questioning or answering by witnesses, or closing arguments, unless counsel outside the hearing of the jury obtain a contrary ruling.

## II.    Discussion

### A.  The United States' Motions in Limine

The United States' Motions in Limine, Doc. 53, has nine subparts and seeks (1) to exclude reference to penalty and punishment; (2) to exclude opining on the guilt or innocence of the Defendant; (3) to exclude reference to matters required to be raised by pretrial motion under Fed. R. Crim. P. 12(b)(3); (4) to exclude reference to the United States' charging decisions in this matter; (5) to permit Department of Homeland Security Agent Weston Fisher to sit at counsel's table during trial; (6) to exclude evidence or argument relating to the jury's power of nullification; (7) to exclude references to plea negotiations; (8) to exclude hearsay statements of a defendant offered by a defendant; and (9) to preclude evidence or argument relating to the purchase of a firearm for necessity. Each is addressed below.

2

### 1.  Reference to Penalty or Punishment

Under subpart one, the United States moves to preclude Jarquin-Rivera, his attorney, and any witness from referring to the possible penalty or punishment Jarquin-Rivera will face if convicted of the crime charged.  The United States argues that permitting the jury to hear information about what penalty or punishment Jarquin-Rivera faces would be improper and would only confuse the jury.  Jarquin-Rivera requests that this order apply equally to the United States and that the United States not be permitted to comment on any immigration consequences that Jarquin-Rivera may face if convicted.

"It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994) (cleaned up and citation omitted).  The jury's role "is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." Id. "[P]roviding jurors sentencing information invites them to ponder matters . . . not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. (citation omitted).  The jury must be able to carry out its role uninfluenced by the consequence of its verdict. See id. at 578 (citation omitted); United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost never instructed concerning the consequences of verdicts.").

Accordingly, this Court grants the United States' Motions in Limine as to subpart one. There shall be no reference to or comment on the possible penalty or punishment Jarquin-Rivera could receive if convicted, including immigration consequences.  This does not, however, preclude Jarquin-Rivera from referring to the charge as a "serious" or "felony" offense.  Both parties are

3

prohibited from eliciting testimony or arguing about the consequences of a conviction and whether that would trigger deportation.

### 2.  Opining on Guilt or Innocence

Under subpart two, the United States requests an order barring Jarquin-Rivera, his attorney, and any witnesses from expressing their opinion about the guilt or innocence of Jarquin-Rivera. Evidence expressing an opinion on a defendant's innocence or guilt "invades the province of the jury" and is inadmissible.  See United States v. Thirion, 813 F.2d 146, 156 (8th Cir. 1987) (reasoning that a government witness's opinion that defendant was innocent "is not truly exculpatory evidence because it is inadmissible as it invades the province of the jury"); Wesson v. United States, 164 F.2d 50, 55 (8th Cir. 1947) ("And any such unnecessary opinion evidence in a criminal case that will inescapably be a plain expression of the witness's opinion of the defendant's guilt . . . should be scrupulously avoided."). Therefore, no witness or attorney may opine on the guilt or innocence of Jarquin-Rivera. This, of course, does not preclude Jarquin-Rivera from potentially testifying about his innocence nor prevent his attorney from asserting actual innocence or arguing that the evidence presented at trial does not establish guilt beyond a reasonable doubt.

### 3.  Reference to Matters Required to Be Raised by Pretrial Motion (Fed. R. Crim. P. 12(b)(3))

Next, the United States seeks to prohibit Jarquin-Rivera from referencing matters that should have been brought before this Court by pretrial motion under Fed. R. Crim. P. 12(b)(3). In relevant part, Rule 12(b)(3) provides that:

> The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
> (A) a defect in instituting the prosecution, including:
> (i) improper venue;
> (ii) preindictment delay;
> (iii) a violation of the constitutional right to a speedy trial;

4

(iv) selective or vindictive prosecution; and
(v) an error in the grand-jury proceeding or preliminary hearing;
(B) a defect in the indictment or information, including:
(i) joining two or more offenses in the same count (duplicity);
(ii) charging the same offense in more than one count (multiplicity);
(iii) lack of specificity;
(iv) improper joinder; and
(v) failure to state an offense;
(C) suppression of evidence;
(D) severance of charges or defendants under Rule 14; and
(E) discovery under Rule 16.

Additionally, although not explicitly listed under Rule 12(b)(3), a defendant's argument that law enforcement engaged in "outrageous government conduct"[1] is a question of law and therefore must be "raised as a pre-trial motion to dismiss the indictment." United States v. Nguyen, 250 F.3d 643, 645–46 (8th Cir. 2001) (stating that the failure to file a pre-trial motion to dismiss the indictment based on outrageous government conduct "waives the issue") (citing United States v. Henderson-Durand, 985 F.2d 970, 973 n.4 (8th Cir. 1993)); see also United States v. Duncan, 896 F.2d 271, 274–75 (7th Cir. 1990) (agreeing "with the Second Circuit that an outrageous governmental conduct defense must be made the subject of a pre-trial motion" (citing United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir. 1980)).

Unless otherwise set by the court, the deadline to file motions under Rule 12(b)(3) is the start of trial. Fed. R. Crim. P. 12(c)(1), (c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely."); see United States v. Trancheff, 633 F.3d 696, 697 (8th Cir. 2011). In this case, the deadline for filing such motions was June 9, 2026. Doc. 42. A

---

[1] Outrageous governmental conduct refers to "conduct of law enforcement agents [that] is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431–32 (1973). The United States Court of Appeals for the Eighth Circuit has stated that "[t]he level of outrageousness needed to prove a due process violation is 'quite high,' and the government's conduct must 'shock the conscience of the court.'" United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) (quoting United States v. Pardue, 983 F.2d 835, 847 (8th Cir. 1993)).

5

party's failure "to [timely] file a pretrial motion by the deadline" constitutes a waiver of that issue. Trancheff, 633 F.3d at 697. Although a court has the discretion to excuse a waiver and review an untimely filed pretrial motion, id., the party seeking the court's review must show good cause, meaning they "must show both cause and prejudice." United States v. Mayer, 63 F.4th 680, 683 (8th Cir. 2023) (citation omitted). Thus, absent good cause shown, Jarquin-Rivera may not raise or argue a defense, objection, or request enumerated under Rule 12(b)(3) at trial.

**4. Reference to Government's Charging Decisions in This Matter**

The United States requests an order preventing Jarquin-Rivera, defense counsel, and any witness from making direct or indirect reference to the United States' charging decision in this matter. References to the United States' charging decisions generally offer "minimum probative value" and are typically "outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury." United States v. Reed, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases where other courts of appeal upheld exclusion of evidence of prior charging decisions); United States v. Noske, 117 F.3d 1053, 1058 (8th Cir. 1997) (affirming district court's exclusion of IRS agent's recommendation against prosecuting defendant). Jarquin-Rivera does not oppose this part of the United States' Motions in Limine and seeks to also preclude the United States from referencing the charging decision or law enforcement decision to investigate the offenses. See Doc. 55 at 4–5. This Court grants subpart four of the United States' Motions in Limine and subpart five of Jarquin-Rivera's Motions in Limine, and both parties will be precluded from referring to the United States' charging decision or law enforcement decisions to investigate, but this does not impede Jarquin-Rivera from attacking the credibility of the prosecution witnesses or contesting the evidence presented in the case or impede the United States from presenting evidence relevant to the crimes charged.

### 5. Request for Investigator to Sit at Counsel Table

Subpart five requests that a case agent, identified at the pretrial conference to be Weston Fisher, be allowed to sit at counsel table during trial.[2] This Court grants subpart five of the United States' Motions in Limine.

### 6. Jury Nullification

Subpart six seeks to prevent Jarquin-Rivera, defense counsel, and any witness from making direct or indirect reference to jury nullification. Such information is not relevant to Jarquin-Rivera's guilt or innocence. See United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) ("[T]he power of juries to 'nullify' or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."). This Court grants subpart six of the United States' Motions in Limine.

### 7. References to Plea Negotiations

Subpart seven seeks to prevent Jarquin-Rivera, defense counsel, and any witness from making any comments or references, whether direct or indirect, to plea negotiations in this matter. The United States argues that such information is not relevant to Jarquin-Rivera's guilt. Rule 410(a) of the Federal Rules of Evidence renders plea discussions inadmissible. The exceptions to that rule contained in Rule 410(b) do not apply here. This Court grants subpart seven of the United States' Motions in Limine.

### 8. Hearsay Statements of a Defendant Offered by a Defendant

Subpart eight seeks an order in limine precluding Jarquin-Rivera, defense counsel, and any witness from introducing, through his witnesses or others, prior statements by himself. The United

---

[2] The United States' motion also requested that IRS Agent Corey Vickery be allowed to attend testimony given by cooperating witnesses, however, this paragraph was included by mistake and does not pertain to the case at hand. See Doc. 53 at 5.

States argues that allowing Jarquin-Rivera to put his own statements in through other witnesses denies the United States the right of cross-examination of the defendant. In affirming the exclusion of a defendant's prior statement, the Eighth Circuit highlighted that the defendant had not taken the stand and therefore was not subject to cross-examination, and that it could not "think that the privilege against self-incrimination extends so far as to allow a defendant's statements to be admitted without also allowing the government a chance to explore the facts surrounding them for motive and other relevant matter." United States v. Greene, 995 F.2d 793, 799 (8th Cir. 1993). See also United States v. Love, 521 F.3d 1007, 1009 (8th Cir. 2008) (affirming where the district court sustained an objection to defense counsel's attempt to introduce defendant's exculpatory statement through law enforcement agent's testimony); United States v. Sadler, 234 F.3d 368, 372–73 (8th Cir. 2000) (affirming where the district court excluded defendant's exculpatory prior statements after defense counsel attempted to introduce these statements through the testimony of defendant's former lawyer). This Court grants subpart eight of the United States' Motions in Limine subject to revisiting the ruling if there is good cause to do so.

### 9. Preclusion of Evidence or Argument Relating to Purchase of a Firearm for Necessity

Subpart nine seeks to preclude Jarquin-Rivera, defense counsel, and any witness from making any comments or references, whether direct or indirect, to purchasing a firearm out of necessity. A justification defense for attempting to purchase a firearm requires the demonstration of the following:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

United States v. Martin, 62 F.3d 1009, 1011–12 (8th Cir. 1995) (citing United States v. Stover, 822 F.2d 48, 50 n.3 (8th Cir. 1987). The Fifth Circuit, which has recognized this defense, noted that "Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law," which "includes a right of self-defense, and went on to conclude that '[w]e do not believe that Congress intended to make ex-felons helpless targets for assassins.'" Id. at 1011 (quoting United States v. Panter, 688 F.2d 268, 271 (5th Cir. 1982) (cleaned up) (quoting United States v. Bailey, 444 U.S. 394, 415 n.11 (1980))).

The United States argues that the Eighth Circuit has declined to recognize a defense of legal justification to a violation of 18 U.S.C. § 922. Doc. 53 at 7 (citing United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996)). However, "[t]he Eighth Circuit has indicated that defenses of legal justification/necessity or coercion/duress to a violation of 18 U.S.C. § 922(g) are available if there is sufficient evidence to warrant the giving of such an instruction." United States v. Kelly, No. 5:25-CR-50149-CCT, 2026 WL 84491, at *2 (D.S.D. Jan. 12, 2026) (citing United States v. Atilano, 101 F.4th 977, 983 (8th Cir. 2024); United States v. Ladeaux, 61 F.4th 582, 586–87 (8th Cir. 2023); United States v. Poe, 442 F.3d 1101, 1104 (8th Cir. 2006) ("To be entitled to a jury instruction on a justification defense, a defendant must show an underlying evidentiary foundation as to each element of the defense, such that a reasonable person could conclude that the evidence supported the defendant's position." (citation modified))).

In Atilano, the Eighth Circuit concluded that the defendant's argument had not satisfied his burden of showing the offense, possession of firearms and ammunition when he knew he was

9

unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8), was committed under duress "because his evidence consisted of a generalized and speculative fear of violence and he failed to show that he had no reasonable legal alternative to committing the crime." Atilano, 101 F.4th at 983. To prove duress, a defendant has

> the burden of showing by a preponderance of the evidence: (1) an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) he had not recklessly or negligently placed himself in a situation making it probable that he would be forced to commit a crime; (3) he had no reasonable, legal alternative to violating the law; and (4) the existence of a direct causal relationship that can reasonably be anticipated between the commission of the criminal act and avoidance of the threatened harm.

Id. (citing United States v. Myles, 962 F.3d 384, 387 (8th Cir. 2020)).

Jarquin-Rivera has no objection to subpart nine. Therefore, this Court grants subpart nine of the United States' Motions in Limine.

## B. Jarquin-Rivera's Motions in Limine

Jarquin-Rivera moves in limine (1) to prohibit the United States' use of evidence of other crimes, wrongs, or acts; (2) to permit Defense Investigator Peter Zenner to sit at counsel's table during trial; (3) to exclude South Dakota Driver's License Application Forms; (4) to exclude certain immigration pleadings prepared and filed by Jarquin-Rivera's immigration lawyer; and (5) to exclude reference to the United States' charging decisions or law enforcement decisions in this matter. Doc. 55. Following the filing of the Second Superseding Indictment, Jarquin-Rivera supplemented his initial motions to further move in limine (6) to exclude evidence and testimony that Jarquin-Rivera illegally entered the United States; and (7) to exclude evidence that Jarquin-Rivera was unlawfully present in the United States, including portions of NICS reports. Doc. 64. Each is addressed below.

10

### 1. 404(b) Evidence

Subpart one requests an order excluding any other acts under Federal Rule of Evidence 404(b) for which the United States has not provided notice. This Court notes that one of the acts disclosed in the previous 404(b) notice, Doc. 47 (giving notice of the defendant having filled out two ATF Form 4473s on December 30, 2023), is now charged in two additional counts in the Second Superseding Indictment, Doc. 60. Rule 404 prohibits the use of any other crime, wrong, or act as propensity evidence, but there are limited exceptions for the admission of other crimes, wrongs, or acts, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). In a criminal case, a prosecutor is required to provide notice prior to trial in writing of any such evidence the prosecutor intends to offer at trial and the purpose for which the prosecutor intends to offer it. Fed. R. Evid. 404(b)(3). Preliminarily, the Court grants subpart one of Jarquin-Rivera's Motions in Limine to preclude any reference to any other bad act besides what is alleged to have occurred in the attempted purchase of firearms on September 25, 2024, and December 30, 2023, as noticed in Doc. 47.

### 2. Request for Investigator to Sit at Counsel Table

Subpart two requests that Defense Investigator Peter Zenner be allowed to sit at counsel table during trial. This Court grants subpart two of Jarquin-Rivera's Motions in Limine.

### 3. Exclusion of South Dakota Driver's License Application Forms

Subpart three requests an order excluding the four South Dakota Driver's License Application Forms filled out by Jarquin-Rivera as irrelevant, or in the alternative, an order limiting the United States to introducing only one of the four South Dakota Driver's License Application Forms that Jarquin-Rivera filled out as well as a redaction of any information indicating that

Jarquin-Rivera failed the driver's exam. On each of the forms, Jarquin-Rivera disclosed that he is not a citizen of the United States. Jarquin-Rivera also argues in the alternative that introduction of all four of the forms would be cumulative and prejudicial as the jury might speculate why Jarquin-Rivera needed to reapply multiple times. Jarquin-Rivera further argues that if any application form were to be introduced, at a minimum the commentary indicating Jarquin-Rivera failed the driver's test should be redacted as it is irrelevant to the case at hand.

At the pretrial conference, the United States clarified that it is intending to introduce all four forms. The first three forms are all in August and September 2023, and the last form is from June 2024. These times are close to when Jarquin-Rivera allegedly made false statements about being a citizen on forms to acquire firearms. Jarquin-Rivera is not contesting whether the forms bear some relevance, but rather that the introduction of all of the forms is cumulative and prejudicial. Jarquin-Rivera also thinks the second pages of the forms contain hearsay and wants to avoid having members of the jury speculating why he had to apply so many times and the kind of driver he is as that would be unfairly prejudicial. The United States does not have an issue with introducing only the first page and not the second page of the applications. If the Court lets in all application forms, Jarquin-Rivera requests that the section where he disclosed having a Panama driver's license be redacted because it appears on the first two forms and not the last two forms. The United States raises that this section could be relevant because if he does have a license from somewhere else, not the United States, it further bolsters the conclusion that he is not from the United States.

The outcome of Jarquin-Rivera's driving test is not relevant, and this Court will allow only the portion of the applications Jarquin-Rivera completed. An innocent explanation for the different answers concerning the Panamanian license could be that the license expired. This Court worries

that a redaction of Question 4 altogether would lead the jury to ponder worse possibilities than the truth: that Jarquin-Rivera disclosed that he at some point had a driver's license in Panama. To address defense counsel's concerns, this Court will not allow Jarquin-Rivera's answer to Question 4 to be used to argue that Jarquin-Rivera makes false statements on applications or as proof that he is not a United States citizen. Special Agent Manuel Jimenez may translate this section, including Question 4 but is not to make an issue, inference, or argument based on the differing answers to Question 4. This Court grants subpart three of Jarquin-Rivera's Motions in Limine to the extent detailed above.

### 4. Exclusion of Immigration Case Documents

Subpart four requests an order excluding immigration pleadings prepared and filed by Jarquin-Rivera's immigration lawyer as impermissible hearsay and a document received in discovery labeled "Order of the Immigration Judge," which is related to his asylum petition. Under Federal Rule of Evidence 801, hearsay means any statement "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Jarquin-Rivera believes the United States intends to offer the immigration pleadings filed by his attorney for the truth of the matter asserted within them, which he argues it may not do as the declarant of these documents is the immigration attorney and not Jarquin-Rivera himself.

Statements of Jarquin-Rivera offered by the United States would be admissible under Rule 801(d)(2) as an opposing party's statement. See Fed. R. Evid. 801(d)(2). However, "all pleadings on information and belief are hearsay." In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000). See also Tracinda Corp. v. DaimlerChrysler AG, 362 F. Supp. 2d 487, 498–99 (D. Del. 2005) (excluding a complaint as irrelevant and inadmissible hearsay where

13

offered complaint alleged information about the defendant relevant to establish personal jurisdiction over the defendant adopted under oath by a party unrelated to the instant litigation); In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, 1997 WL 201614, at *4 (N.D. Ill. Apr. 8, 1997) (declining to accept as true allegations in complaint made in separate case); T.I. Constr. Co. v. Kiewit E. Co., Civ. A. No. 91-2638, 1992 WL 382306, at *4 (E.D. Pa. Dec. 10, 1992) ("Complaints, and the charges and allegations they contain, are hearsay under the Federal Rules of Evidence.").

At the pretrial conference, the United States clarified that it intends to introduce the pleadings, which have been marked as proposed Exhibit 28. This Court preliminarily anticipates excluding proposed Exhibit 28 as hearsay.

Jarquin-Rivera also moves to exclude a "summary of the oral decision entered on 10/4/2022. This memorandum is solely for the convenience of the parties. The oral or written Findings, Decisions, and Orders is the official opinion in this case." Public records in a civil case where "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness" are admissible as an exception to the rule against hearsay. Fed. R. Evid. 803(8). Jarquin-Rivera argues "it is inappropriate to enter into evidence an order that patently states that it is not to be relied on as a record of the proceedings, and "[b]ecause the order purports to not be an official record of the proceedings, it is not relevant, and risks unfair prejudice or confusion of the issues." Doc. 55 at 4 (citing Fed. R. Evid. 401, 403).

When considering whether warrants of deportation was testimonial, the Eighth Circuit observed, "Warrants of deportation are produced under circumstances objectively indicating that their primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions."

14

United States v. Torres-Villalobos, 487 F.3d 607, 613 (8th Cir. 2007) (citing Davis v. Washington, 547 U.S. 813, 821–24 (2006)). Therefore, the Eighth Circuit concluded warrants of deportation "are properly characterized as non-testimonial official records that were prepared independent of this litigation," and were not testimonial evidence implicating the Confrontation Clause of the Sixth Amendment. Id. (citing Crawford v. Washington, 541 U.S. 36, 56 (2004); United States v. Urqhart, 469 F.3d 745, 748–49 (8th Cir. 2006) (affirming the admission of a Certificate of Nonexistence of Record from defendant's "alien-file" ("A-file") as nontestimonial evidence and admissible as an exception to the hearsay rule under Federal Rule of Evidence 803(10)). See also United States v. Lorenzo-Lucas, 775 F.3d 1008, 1010 (8th Cir. 2014) (revisiting the holding in Torres-Villalobos following Melendez–Diaz v. Massachusetts, 557 U.S. 305 (2009) and concluding "nothing in Melendez–Diaz is clearly irreconcilable with [the] holding that a warrant of removal is nontestimonial because it was not made in anticipation of litigation" (quoting United States v. Orozco–Acosta, 607 F.3d 1156, 1164 (9th Cir. 2010) (cleaned up and citation omitted)); United States v. Ngombwa, No. 14-CR-123-LRR, 2016 WL 111434, at *9 (N.D. Iowa Jan. 10, 2016) (noting that the "admissibility of documents from an A-File may be contingent on the particular nature of those documents").

At the pretrial conference, the United States clarified that the order that it plans to offer is different from the one that Jarquin-Rivera identified in this subpart. Jarquin-Rivera does not object to the admission of this other order. Therefore, this Court grants the first part of subpart four and denies the second part as moot.

15

### 5. Reference to Government's Charging Decisions in This Matter

Subpart five requests that references to the United States' charging decisions be precluded during trial. For the reasons articulated above in Section II.A.4, this Court grants subpart five of Jarquin-Rivera's Motions in Limine.

### 6. Exclusion of Evidence and Testimony that Jarquin-Rivera Illegally Entered the United States

Subpart six requests an order excluding evidence and testimony related to Jarquin-Rivera entering the country illegally as irrelevant and unfairly prejudicial. Jarquin-Rivera argues that, based on the discovery, he was in the process of seeking asylum in the United States at the time of the alleged offense. Jarquin-Rivera highlights that a person may seek asylum in the United States or request a stay of removal in numerous ways, including by entering illegally.

At the pretrial conference, the United States informed this Court that the Border Patrol agent plans to testify about Jarquin-Rivera's statements at the border concerning his citizenship and his family's citizenship. Given how politically charged immigration policy is, unfair prejudice may arise should Jarquin-Rivera be labeled by the United States as being "illegal." This Court will allow testimony that Jarquin-Rivera was encountered by Border Patrol after crossing the southern border of the United States at a certain date and time, as well as his statements, his being detained, and his release. The United States anticipates the Border Patrol agent testifying that Jarquin-Rivera applied for relief, which was denied, and that that appeal has been pending for a number of years now. This Court requests that the testifying agents substitute "entry without authorization," "encountering an agent," or "presenting to a border agent" rather than describing Jarquin-Rivera's actions as "illegal." Jarquin-Rivera highlighted during the pretrial conference and motion hearing parts of the United States' proposed exhibits that had been marked 18 and 23 as unfairly prejudicial. The United States did not oppose a redaction of the sections indicating that

16

Jarquin-Rivera refused to sign and should so redact those documents. Therefore, this Court grants subpart six of Jarquin-Rivera's Motions in Limine to the extent detailed above.

**7. Exclusion of Evidence that Jarquin-Rivera was Illegally Present in the United States, Including Portions of NICS Reports**

Subpart seven requests an order excluding evidence related to Jarquin-Rivera being in the country illegally as irrelevant and unfairly prejudicial. Jarquin-Rivera understands that the United States intends to offer evidence that Jarquin-Rivera "was considered illegally or unlawfully in the United States despite his status in asylum proceedings and lawful work authorization." Doc. 64 at 2. Further, Jarquin-Rivera highlights that "the Second Superseding Indictment only makes allegations about [his] statements as to his citizenship." Id. (citing Doc. 60). Therefore, Jarquin-Rivera argues, Jarquin-Rivera's presence in the country, whether illegally or legally, is irrelevant to the question of whether or not he was a citizen. He further argues that whatever probative value the evidence has is substantially outweighed by the danger of unfair prejudice and confusion of the issue as it may "lead[] the jury to believe that it is enough for them to find that Jarquin-Rivera was unlawfully present in the United States, not the specific elements of the applicable charges." Id. (citing Fed. R. Evid. 403).

Jarquin-Rivera specifically moved to exclude portions of NICS reports related to the three alleged attempted firearms purchases. Jarquin-Rivera understands that the United States plans to offer the reports to provide information about the timing of the purchases but has concerns about the inclusion of "large amounts of information irrelevant to that purpose," including portions of the reports that state "the attempted purchaser is prohibited from possessing firearms because he is not legally in the United States." Id. at 3. He argues that the evidence is irrelevant to the charges alleged in the Second Superseding Indictment and cumulative, as it is stated multiple times.

17

The United States now intends to offer only the first pages of the NICS report exhibits, which are preliminarily marked as Exhibits 2, 4, and 6. This resolved Jarquin-Rivera's objection in this subpart, but Jarquin-Rivera continues to object to any other evidence that Jarquin-Rivera is unlawfully in the United States. Some evidence of Jarquin-Rivera's status in the United States is relevant, but this Court will police the testimony and arguments to ensure that the evidence focuses on the false statement allegations and not a debate on whether Jarquin-Rivera is "unlawfully" in the United States.

## C. Defendant Jarquin-Rivera's Motion to Exclude Expert Testimony

Jarquin-Rivera moves to exclude two of the United States' proposed experts, Special Agent Manuel Jimenez and Cassandra Collins. Doc. 49. The United States opposes. Doc. 50.

### 1. SA Manuel Jimenez

The United States has provided notice that SA Jimenez will testify concerning translations of "the 'Spanish version of a form and an English version of a form,' which Jarquin-Rivera understands based on the discovery to refer to the South Dakota Driver License/I.D. Card Application;" and "the content of, to Jarquin-Rivera's knowledge, unrecorded conversations between SA Jimenez and Jarquin-Rivera that occurred on February 25 and 26, 2025." Doc. 49 at 1–2. Jarquin-Rivera argues that SA Jimenez's "proposed testimony would be about his recollections of conversations with Jarquin-Rivera that were held in Spanish in February of 2025, before and during Jarquin-Rivera's arrest," and therefore, "[t]hat testimony would fall squarely under his personal knowledge under Rule 602." Id. at 2. Because testimony of this nature does not require expert analysis or opinions, Jarquin-Rivera argues, SA Jimenez should testify to his recollection of the specific wording of the conversations in Spanish and allow the interpreter to translate that testimony into English. Id. at 2–3. Further, Jarquin-Rivera argues that the United

18

States' Third Amended Expert Notice, Doc. 46, is deficient under Federal Rule of Evidence 16 because it fails to give complete statements of all SA Jimenez's opinions or provide the bases for them because "[t]he report provided in discovery prepared by SA Jimenez does not provide Spanish versions of the conversations about which SA Jimenez will testify, or transcriptions of the translated material, only English summaries of what SA Jimenez alleges transpired." Doc. 49 at 4 (citing Doc. 49-1). Finally, Jarquin-Rivera argues that allowing SA Jimenez to be qualified as an expert would be an inappropriate dual-role testimony, and as it is not necessary for him to be qualified as an expert to testify to his recollection of a conversation in Spanish, he should only testify as a lay witness to avoid the risks associated with dual-role testimony. Id. at 4–5 (citing United States v. Overton, 971 F.3d 756, 762–63 (8th Cir. 2020)). Because SA Jimenez was not involved in preparing the South Dakota license forms, Jarquin-Rivera concludes, there is no need for him to be the expert to verify the Spanish translation should the United States believe an expert is necessary to provide testimony as to the contents of the English and Spanish form. Id. at 5.

The United States informed this Court in its response that the parties have reached a resolution concerning SA Jimenez's testimony as well as the testimony of another government Spanish language speaking witness, Richard Hernandez. Doc. 50. For the testimony about conversations with Jarquin-Rivera, "the United States will ask some questions of the witness so the jury is aware that the witness has sufficient knowledge of the Spanish language to have conducted a conversation with the defendant in Spanish and recorded its contents in English." Id. at 1. However, the United States "will not attempt to qualify the witnesses as Spanish language experts in a manner that would appear to bolster the witnesses' credibility as fact witnesses." Id. at 1–2. In terms of the application form testimony, the United States proposes to bifurcate SA Jimenez's testimony as suggested by United States v. Overton, 971 F.3d 756 (8th Cir. 2020). Id.

at 2. At the pretrial conference, Jarquin-Rivera informed this Court that this issue had been resolved by the parties and therefore, there was no need for the Court to take this issue up.

### 2. Cassandra Collins

The United States has provided notice that Collins will provide a comparison of fingerprints in her capacity as a fingerprint examiner. Doc. 46 at 5. Jarquin-Rivera argues that the United States' notice regarding Collins was both untimely and deficient. Doc. 49 at 6–7. This Court set the expert witness notice deadline as June 2, 2026. Doc. 42. The United States filed its first notice of expert witnesses, including Collins, on June 2, 2026, Doc. 43, its second on June 3, Doc. 44, its third later in the day on June 3, Doc. 45, and its fourth on June 8, Doc. 46. The United States first attached Collins's curriculum vitae on June 3, Doc. 45-1, and first attached Collins's lab report on June 8, Doc. 46-1. Jarquin-Rivera argues that the first "notice did not state what Collins's opinions would be, or even whether they were known by the government at the time of filing" or "the bases for those opinions." Doc. 49 at 6. Jarquin-Rivera argues that the late inclusion of the report is untimely and should be excluded. In the alternative, should this Court deem this report timely, Jarquin-Rivera argues that the report should be excluded as deficient as it "does not include the copies of the fingerprint cards that were inspected by Collins to form her conclusions, so the defense is unable to adequately meet the expert testimony." Id. at 7. Therefore, Jarquin-Rivera argues, the untimely and insufficient notice prejudices the defense and the expert should be excluded. Id.

In response, the United States asserts that "its initial expert notice and the ongoing disclosure of information as it became available is sufficient in this case, and that an appropriate remedy, if desired by the defendant, is to grant a continuance if the defendant wishes to retain its own fingerprint expert to contest the findings presented in the Collins report." Doc. 50 at 2–3

20

(citing Fed. R. Crim. P. 16(d)).  The United States adds that "the defendant was notified of an incoming report and that report was disclosed as soon as practicable after receipt, and more than two weeks before the trial is set to begin," and "[a]s to the fingerprint card copies themselves, the failure to turn them over was inadvertent and, based on the information contained in the motion, the United States has now submitted the copies of the fingerprint cards used by the examiner to defense counsel." Id. at 3.  The original notice, the United States argues, made clear the subject of Collins's proposed testimony was the comparison of two sets of fingerprints, one from the border and one from Jarquin-Rivera's arrest. Id.  The United States concludes, "Given that the defendant would have been aware that his fingerprints were taken at the border in April 2021 and during his arrest in the current case, that the United States provided notice it intended to compare the fingerprints, and that the fingerprint expert's report was disclosed as soon after receipt as possible, exclusion of the expert's testimony and conclusions is not the appropriate remedy." Id. at 4.  The United States noted it would not oppose a continuance to allow Jarquin-Rivera to call his own expert on fingerprint analysis. Id.  Jarquin-Rivera has not sought such a continuance.

> Federal Rule of Criminal Procedure 16(d) provides for the following remedies:
>
> If a party fails to comply with this rule, the court may:
> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> (B) grant a continuance;
> (C) prohibit that party from introducing the undisclosed evidence; or
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d).  In general, when the United States makes a late disclosure, in considering whether to exclude testimony on the basis of late disclosure, a court looks to "(1) whether the Government acted in bad faith and the reason(s) for delay; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance." United States v. Stenger, 605 F.3d 492, 501 (8th Cir. 2010) (quoting United States

21

v. Lofton, 557 F.3d 594, 597 (8th Cir. 2009) (internal quotation and alteration omitted)). However, "under the Federal Rules of Criminal Procedure, the government has a special obligation to disclose the substance of expert witnesses' testimony at the defendant's request." Id. (citing Fed. R. Crim. P. 16(a)(1)(G)).

This case differs substantially from instances where a court has found bad faith. For instance, when there was a late disclosure of DNA evidence on the eve of trial, the Eighth Circuit concluded that the district court did not abuse its discretion in excluding the evidence where (1) "the government acted with reckless disregard for the discovery deadline," including assuring the district court that the case was trial ready three days before disclosing that DNA testing was in progress; (2) the late disclosure prejudiced the defendants as it made "it virtually impossible, absent a continuance, for defendants to evaluate and confront the evidence against them" because "DNA evidence is scientific and highly technical in nature; it would have required thorough investigation by defense counsel, including almost certainly retaining an expert witness or witnesses"; and (3) "[t]he district court refused to condone the government's last-minute production of the DNA evidence by allowing the evidence to be presented at trial and thereby forcing defendants to seek a continuance." United States v. Davis, 244 F.3d 666, 671–72 (8th Cir. 2001). The Eighth Circuit "agree[d] with the district court that the fact that hair and saliva samples had been taken from defendants shortly after their arrest did not necessarily put defendants on notice that DNA evidence would be introduced during the trial, especially when the government did not produce any DNA evidence by the discovery deadline." Id. at 672.

Here, after the disclosure of the fingerprint evidence, this Court on June 17, 2026, granted a continuance of the trial to July 14, 2026. Doc. 59. Jarquin-Rivera has not suffered any prejudice as he could have obtained his own fingerprint expert in that timeframe or sought an additional

22

continuance to do so.  Therefore, Jarquin-Rivera's Motion to Exclude Expert Testimony, Doc. 49, is denied.

### III.    Conclusion

Therefore, it is hereby

ORDERED that Defendant Jarquin-Rivera's Motion to Exclude Expert Testimony, Doc. 49, is denied.  It is further

ORDERED that the United States' Motions in Limine, Doc. 53, are granted to the extent stated herein.  It is further

ORDERED that Defendant Jarquin-Rivera's Motions in Limine, Docs. 55, 64, are granted to the extent stated herein.

DATED this 14th day of July, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE